UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES M. DiGIOIA,

                              Plaintiff,

          v.                                    1:03-CV-1161
                                                  (LEK/RFT)
DANIEL BERRY

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MEMORANDUM-DECISION AND ORDER

          Plaintiff James DiGioia ("Plaintiff" or "DiGioia") commenced the instant action

against Defendant Daniel Berry ("Defendant" or "Berry") pursuant to 42 U.S.C. § 1983,

arising out Berry's recommendation that Plaintiff be arrested and charged with a violation of

the terms and conditions of his parole.  Plaintiff alleges that the charges were not supported

by probable cause and were instituted out of Berry's personal animus.  Presently before the

Court is Defendant's Motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  See Motion (Dkt. No. 35).[1]

## I.  FACTS

          In 1989, Plaintiff was convicted of Sodomy in the First Degree.  The facts

underlying the conviction arose out of Plaintiff's having given a woman a ride in his car.

According to Plaintiff, he offered a woman a ride.  When the woman accepted the ride,

_____

          [1] The Court notes that Docket Number 40 is categorized as a second Motion in this case.
However, upon review it appears that those papers are actually a Response by Plaintiff to
Defendant's Motion.  Therefore, Docket Number 40 is hereby ordered terminated as a pending
Motion.

Plaintiff asked for oral sex.  When the woman refused, Plaintiff asked whether she would

prefer to give him oral sex or walk.  The woman then performed oral sex on Plaintiff.  Plaintiff

was sentenced to a term of imprisonment of five to fifteen years and placed in the custody of

the New York State Department of Corrections.  In December 1995, Plaintiff was released to

parole supervision.  In July or August 1997, his parole was revoked.  In or about November

1997, Plaintiff was again released to parole supervision.

       In April or May 1998, Defendant became Plaintiff's parole officer.  Part of the terms

and conditions of Plaintiff's parole release was that he not be in the company of or fraternize

with individuals he knew to have criminal records.  Exceptions to this condition were made for

accidental encounters in public places or encounters approved by the parole officer.  Another

condition of Plaintiff's parole was that he participate in a sex offender treatment program.  As

part of this treatment program, Plaintiff was required to execute a release for records and

waiver of confidentiality that enabled the Division of Parole to obtain his treatment records to

monitor his compliance with the program.

       In August 2000, Plaintiff went to the Columbia County Department of Social

Services for an intake assessment to see if they could appropriately treat him.  At that time,

Plaintiff did not execute a release permitting the Division of Parole to access the Columbia

County Department of Social Services' records.

       In August 2000, Amie Anderson was an inmate in the custody of the New York

State Department of Correctional Services.  Anderson was a participant in a work release

program.  A work release inmate is allowed to work outside the correctional facility in which

she is incarcerated, but remains in the custody of that facility.  Anderson was supervised by

Joseph Carey.  Anderson reported that she was approached by Plaintiff and that Plaintiff

inquired whether she was an inmate or parolee.  Anderson purportedly advised Plaintiff that

she was on work release status.  Anderson reported that she was again approached by

Plaintiff in September 2000 and that Plaintiff repeatedly asked her if she wanted a ride or

would like to go somewhere with him, such as a restaurant.  Anderson rejected Plaintiff's

invitations.  One of these occasions, Carey observed Plaintiff speaking with Anderson.

  Upon learning of the encounter between Plaintiff and Anderson, Defendant

investigated.  As part of the investigation, Defendant obtained a sworn statement from

Anderson concerning her encounters with Plaintiff.  The sworn statement reiterated that

Plaintiff approached Anderson, inquired of her criminal history, and approached her at a later

date to offer her a car ride and take her to a restaurant.  Defendant reviewed the matter with

his supervisors.  A decision was made to charge Plaintiff with three violations of the

conditions of his parole - one violation of the condition that he not be in the company of or

fraternize with a person known to have a criminal record (Anderson); and two violations of

the condition that he execute releases for records pertaining to his treatment in the sex

offender program.

  Based on the charges, a warrant was signed for Plaintiff's arrest.  Plaintiff was

arrested.  A preliminary hearing was held on October 5, 2000, at which time Plaintiff was

represented by counsel.  At the conclusion of the hearing, the hearing officer concluded that

probable cause existed to support the charges.  As a result, Plaintiff was held for a final

revocation hearing.  The final revocation hearing was held on November 21, 2000.  During

this hearing, the two charges relating to the release of medical records were dismissed.  The

administrative law judge sustained the first charge concerning Plaintiff's being in the

company of or fraternizing with a person known to have a criminal record.  Plaintiff appealed

the determination to the Division of Parole, which affirmed.  Plaintiff ultimately filed an Article

78 proceeding challenging the determination of the Division of Parole.  The Supreme Court,

Appellate Division held that "the evidence established that [Plaintiff's] conduct was nothing

more than an attempt to fraternize, which, in our view, does not rise to the level of

association or fraternization proscribed by the regulation."  DiGioia v. Travis, 745 N.Y.S.2d

117 (3d Dep't 2002).  Consequently, the determination of the Division of Parole was

annulled.

Plaintiff then commenced the instant action pursuant to 42 U.S.C. § 1983 claiming

that his arrest was in violation of his Fourth and Fourteenth Amendment rights.  Presently

before the Court is Defendant's Motion for summary judgment, pursuant to Rule 56, seeking

dismissal of the Complaint in its entirety.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In applying the standard, courts must "'resolve all

ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the

party opposing summary judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)

(quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party

meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant

"must do more than simply show that there is some metaphysical doubt as to the material

facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." <u>Brown</u>, 257 F.3d at 252 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991); <u>W. World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990).

## III.  DISCUSSION

### A.  Fourth Amendment

Plaintiff alleges that the parole violation charges were instituted without probable cause and, therefore, he was arrested in violation of his Fourth Amendment rights.  As an initial matter, the parties dispute whether Defendant had to have probable cause, or merely satisfactory evidence, of a parole violation before recommending that a warrant be issued and that revocation proceedings be commenced.  Although there is merit to Defendant's argument, <u>see</u> <u>United States v. Polito</u>, 583 F.2d 48 (2d Cir. 1978); <u>United States v. Basso</u>, 632 F.2d 1007, 1013 (2d Cir. 1980) ("We further observed that the probable cause necessary to make a warrant valid in parole cases could be established merely by a presentation of 'satisfactory evidence' that a person had violated the conditions of his release, a standard looser than that required to satisfy the probable cause requirements for a criminal warrant."), in <u>Scotto v. Almenas</u>, 143 F.3d 105, 113 (2d Cir. 1998), the Second Circuit stated that an arrest by a parole officer made without probable cause "would plainly violate [the parolee's] clearly established right to be free from arrest in the absence of probable cause."  In <u>Scotto</u>, the Second Circuit made no distinction between the probable

cause necessary for a criminal warrant and the probable cause necessary to establish the validity of a warrant in a parole case.  However, the Court need not decide whether a lesser standard of probable cause applies because, for the following reasons, the Court finds that Defendant had probable cause or, at least, arguable probable cause.

"An officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense."  Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citing cases).  Here, Defendant had information from Anderson that Plaintiff had approached her on two separate occasions to strike up a conversation.  In her sworn statement, Anderson stated that, during her first conversation with Plaintiff, he inquired as to her conviction status.  Anderson told Plaintiff that she was on work release.  Thus, Defendant had information that Plaintiff had reason to know that Anderson had a criminal record.  Based on Anderson's statement, Defendant had further information that Plaintiff approached Anderson a second time (after previously becoming aware of her criminal history) and repeatedly asked her if she would like a ride and inquired whether she wanted to go to a restaurant with Plaintiff.  While Plaintiff may dispute these facts, it is undisputed that Anderson reported these facts to her work release supervisor and to Defendant.  Plaintiff does not identify any reason why Defendant should not have believed Anderson.  Moreover, Anderson's work release supervisor stated that he saw Plaintiff conversing with Anderson on one occasion.  These facts are sufficient to warrant a prudent person to believe that Plaintiff was in the company of, or fraternizing with, a person with a known criminal record (Anderson) and that Plaintiff's contact with Anderson was not an accidental encounter.

Even if these facts do not rise to the level of probable cause, they establish arguable probable cause, thereby entitling Defendant to qualified immunity.  See Jenkins v. City of New York, __ F.3d __, No. 06-0182-CV, 2007 WL 415171, at *5 (2d Cir. Feb. 6, 2007).  It was objectively reasonable for Defendant to believe that there was probable cause to recommend that Plaintiff be arrested and charged with violating the condition that he avoid being in the company of, or fraternizing with, persons with a known criminal record.  Although the phrase "be in the company of" or the term "fraternize" might be subject to some ambiguity, it was not unreasonable to conclude that Plaintiff's intentional efforts to communicate with Anderson, give her a ride in his car, and/or have dinner with her sufficiently constituted "being in the company of" or "fraternizing" with a person with a known criminal record.  The objective reasonableness of Defendant's conduct is further supported by the facts that his supervisors agreed with his actions, a supervisor issued a warrant for Plaintiff's arrest, a hearing officer upheld the charges after a hearing, an administrative law judge upheld the charge after a second hearing, and, upon appeal, the Board of Parole affirmed the revocation.  Accordingly, reasonably competent parole officers could disagree whether probable cause existed here.  See Jenkins, 2007 WL 415171, at *5 ("An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest - that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'") (citing cases).  As such, Defendant is entitled to qualified immunity. See Ricciuti, 124 F.3d at 128.

Because Defendant had probable cause, or arguable probable cause, with respect to the "fraternizing" condition, it is irrelevant whether he had probable cause with respect to the claimed violations of the other conditions of parole.  See Jaegly v. Couch, 439 F.3d 149,

153-54 (2d Cir. 2006) ("[W]e conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.  Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge.") (emphasis in original).  For the foregoing reasons, Plaintiff's Fourth Amendment claim is dismissed.[2]

### B.  Fourteenth Amendment

Plaintiff next claims that Defendant violated his equal protection rights under the Fourteenth Amendment.  The basis for Plaintiff's claim is that he was charged with a parole violation for being in the company of Anderson, but Anderson was not similarly charged with a violation for being in the company of Plaintiff.  Thus, Plaintiff argues, he was treated differently from a similarly situated person.

"To prevail on a selective treatment claim,... [P]laintiff must show that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Skehan v. Village of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006) (internal quotations and citations omitted).

---

[2] The fact that the Appellate Division found the Division of Parole's definition of "fraternizing" to be arbitrary and capricious has no bearing on whether Defendant is entitled to qualified immunity.  The inquiry is on whether, at the time of the arrest, it was objectively reasonable for the parole officer to believe that Plaintiff had violated the conditions of his parole; not whether a court, in the exercise of hindsight, later found the interpretation of a regulation to be arbitrary and capricious.

> In establishing the similarly-situated element, [the Second Circuit has] warned that the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.... A plaintiff must show that (1) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (2) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

Skehan, 465 F.3d at 110 (internal quotations, citations, and alterations omitted).

Plaintiff's argument fails because there is insufficient evidence that *Defendant* treated similarly situated persons differently.  The undisputed evidence in the record is that Defendant had no authority or control over Anderson and, thus, was not in a position to institute proceedings against her for any violations of her work release program.  Deft's Stmnt. of Material Facts (Dkt. No. 35, Attach. 3) at ¶¶ 28, 29, 30.  Anderson was in the work release program, whereas Plaintiff was on parole.  Anderson was under the supervision of Joseph Carey, an employee of the Department of Correctional Services, whereas Plaintiff was under the supervision of Defendant, an employee of the Division of Parole.  There is no evidence that Defendant had any ability or authority to require Carey to commence violation proceedings against Anderson.  There is, therefore, no basis for the contention that Defendant treated Anderson differently from Plaintiff.

Moreover, there are fundamental differences between the facts surrounding Anderson and Plaintiff.  Plaintiff intentionally instituted communications with Anderson with knowledge of her criminal history and attempted to pursue further relations with her.  The evidence concerning Anderson's conduct is that she rebuffed Plaintiff's attempts at conversation, his requests to go for a ride or to dinner, and reported the encounter to her supervisor.  Thus, there are qualitative differences between Plaintiff's conduct and that of

Anderson, rendering them not similarly situated.  Plaintiff does not identify any other similarly situated persons compared to whom he was treated differently by Defendant on account of a prohibited consideration, including personal animosity.  Accordingly, the Fourteenth Amendment claim must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED**, that Docket Number 40, which has been mis-characterized as a Motion, is **TERMINATED** as a pending motion in this matter; and it is further

**ORDERED**, that Plaintiff's Complaint and Amended Complaint are **DISMISSED**. The Clerk of the Court shall **CLOSE** the file in this matter.

**IT IS SO ORDERED**.

DATED:  February 28, 2007
        Albany, New York

Lawrence E. Kahn
U.S. District Judge